Good morning, may it please the Court, Stephen Brazelton on behalf of the appellant Ecejor Ortiz Sanchez. Your Honor, the district court properly concluded in this case that the issue is boiled down to whether the appellant's immigration counsel have provided ineffective assistance to the counsel in the deportation proceedings. Which deportation proceeding? In the first one? As I understand it, we have more than one. Is that right? The first one, yes, Your Honor. Okay. The subsequent one for me. Can you give me the date on which one you're talking about? You're talking about the 1997? 1997, 1998. Okay. Subsequent proceedings would have simply been reinstatement proceedings, which since have been declared invalid by this Court. So I'm talking about the ones that were before the immigration judge and the Board of Immigration Appeal. But I guess the question that was raised in my mind, and maybe your answer just addressed perhaps you could expand on it, is how far back can we go? Unless I'm misunderstanding the record, you're asking us to look back beyond the most recent deportation and reentry in order to collaterally attack the original deportation. And at some point, when does the rule of finality apply, and we simply say it's too late? I believe the rule of finality applied when the appellant would have had an adequate opportunity to be heard on the constitutionality of the original proceeding, because the subsequent proceedings relied upon the initial proceeding. But under your theory, if he had been deported and reentered and deported and reentered 30 times over a 15-year period, he could go back and collaterally attack in the 31st reentry the original deportation. And what's your best case to support that proposition? You could imagine a case where a person was a citizen of the United States, maybe. I'm looking for a case citation, not a hypothetical. I'm trying to figure out what the law is in this, because what strikes me as odd about this fact pattern is, is that we are not dealing with the most immediate reentry after the challenge deportation. Do you understand my question? I do, Your Honor. I don't remember the name of the case. I remember one district court case in the eastern part of the country where the court had permitted a collateral attack after someone had been deported, reentered, and their deportation had been reinstated, and then they were collaterally attacking the original deportation proceeding in 1326 reentry case. But apart from that case, I'm not aware of any cases that have addressed this situation. So as far as you know, this is an issue of first impression? I believe so, Your Honor. The original deportation proceeding would have to be constitutional, though, because the subsequent ones relied upon it. And the hypothetical I was going to give was you could have someone who had U.S. citizenship, had derived it from their parents, maybe wasn't even aware of the fact that they were a citizen, could have been deported, reinstated 30 times, and finally on the 30th time realizes, I'm a U.S. citizen. I think the court ---- to the most recent deportation, would it not? Because to the extent he was being deported on a theory that he was an illegal alien who had reentered without permission of the attorney general, a U.S. citizen doesn't need that permission. And therefore, he would have a defense no matter how many times he'd been deported. It seems to me this is a different situation. There's no question that he is an illegal alien. And I guess what I'm really asking is why hasn't he waived the raising of this defense by not raising it the first time that he reentered after he was ordered deported before they deported him again? To ---- A waiver to be valid must be knowing and voluntary. And unfortunately for the appellant, he was appointed by the court an attorney who was incompetent in immigration matters and advised him the first time around that he had no legal defense because the attorney was unaware of this Court's decision in Mogano-Pisano and the U.S. Supreme Court decision in St. Cyr. And then he was appointed to the same counsel for the second time around, for the second reentry proceedings, which preceded the second ---- what would have been the third deportation. And that same counsel again advised him that he had no valid defense. It was not until he consulted with another attorney, which is myself, that he became aware for the first time that he could have challenged the original Board of Immigration Appeals order. And had he challenged it, he would have prevailed in light of this Court's decision in Mogano-Pisano and the U.S. Supreme Court decision. What do we do with the district court finding that after hearing the arguments that he abandoned the appeal for financial reasons? That finding is simply not supported by the record. So you want us to declare that clearly erroneous? Yes, Your Honor. And that finding is subject to de novo review, and the Court has ---- Well, wait a second. This is a factual finding. We don't review factual findings de novo. We review errors of fact under a clearly erroneous standard. There may be legal ramifications that flow from the facts once we've established them, which we review de novo. But unless I misunderstand the standards of review, we are not the original determiners of the facts, are we? The Court is reviewing the ruling on a motion to dismiss and ---- It's inherently based upon a mixed question of fact and of law. And before we can get to the de novo review of the legal question, we have to determine whether or not the facts are clearly erroneous, correct? I believe that the Court's decisions explaining the standard of review for motions to dismiss don't make that distinction. I think they do, unless you've got a case that I'm not aware of in the Ninth Circuit that tells me I'm wrong on revisiting factual determination. The case that I cited in my brief, I believe, stands for that proposition, Your Honor. Which case is that? I have to look under the standard of review section of my brief. The United States v. Ubaldo Figueroa at 364F3D1042 at 1047. 356F3? 364. 364F3? F3 at 1047. We review de novo the denial of the motion to dismiss in 8 U.S.C. section 1326 indictment when the motion to dismiss is based on alleged due process defects in an underlying deportation proceeding. The findings of fact, though, are still reviewed for clear ---- for whether they're clearly erroneous, though. The legal grounds can be reviewed de novo, but if there's factual findings entered by the district court, then those are still subject to the clearly erroneous standard, aren't they? That's not the way that I interpreted the case, but if that's the way this Court interprets it, I would submit that even under the clearly erroneous standard, the findings of the district court were not supported by the record. The court had found that the appellant had abandoned his appeal with his attorney. However, the record belies that. He had continued to make payments to his attorney. The attorney testified that he was satisfied with the progress of his payments. The attorney testified that he still considered himself to be the appellant's attorney. The attorney acknowledged that he alone received the decision on the Board of Immigration Appeals. The attorney did not dispute that on November 3rd, 1998, when the ---- after the appellant had been checking in regularly each month with the INS, and the INS took him into custody, and that his wife called the attorney and inquired at that point whether anything further could be done. The attorney did not dispute that he told them that nothing further could be done. And so even no matter what the findings were, the attorney at that moment, even if arguably the appellant had somehow abandoned his relationship with the attorney, the attorney still had an obligation not to provide erroneous advice. Excuse me, counsel. I'm having some difficulty following you. Your client pleaded guilty and waived appeal. Did he not, to the 1326? Wouldn't that be the end of the whole matter? No, Your Honor. There was an appeal waiver that was included in the guilty plea memorandum. However, in order to be valid, it must have been knowing and voluntary, and where his trial counsel advised him that he had no possible legal defense. But isn't that better brought up under a habeas petition? This Court has instructed that normally, yes, it would be brought up in habeas. However, where the record is complete on the issue of the voluntariness of the guilty plea that includes the appellate waiver, then it can be brought up on direct review. Okay. I see you're out of time, so why don't we hear from the government. Good morning. My name is Robert Don Gifford, and I'm an assistant U.S. attorney from the District of Nevada, and I represent the United States. Just a couple things I do want to point out to the Court. This is a consolidated appeal. However, there has been no evidence or no discussion in regards to any appeal for a supervised release revocation. So I would argue that that issue is waived, even though that there hasn't been an appeal filed on it. It has not been discussed, briefed, or argued. Secondly, the reply brief also makes new argument for the first time in which the government was not able to respond. That new argument is arguing that his immigration counsel is ineffective. That was not presented to the district court, and it was not presented to the government or to the court in the appellant's opening brief. So we had asked that, through our motion to dismiss that reply brief, that there was no argument in regards to the criminal attorney, Mr. Cameron, as listed in the ---- Why don't we start at the question that Judge Bay opposed, and that is, why shouldn't we just dismiss the appeal on the basis of the appellate waiver? That was my initial response when this was first filed with the court. I had filed a motion to dismiss because there was an appellate waiver. It was knowingly, willingly, and voluntarily made. The appellant never once tried to attack that it was not knowingly, willingly, and voluntarily. That was not even mentioned until his reply brief. And that's before we can ever, I guess, basically, I felt that the appellant was putting the cart before the horse, that he never did address whether or how his client waived his appellate rights by showing that it was knowingly, willingly, and voluntarily. In fact, Judge McKibben, who you've heard his name already earlier this morning, Judge McKibben asked the appellant to defend his counsel during the motion hearing, specifically, would you not agree with me that at the time of the BIA decision that that law was correct? Yes, I do. Secondly, the appeal itself, we've stated it on the record, we've stated it in writing, he pled guilty, the appellant did not try to withdraw his sentencing. He pled guilty in October, he showed up the day of sentencing in December, said, I have a new attorney, no motion was filed until several months later, nearly six months later, after his change of plea where he pled guilty was a motion to withdraw his guilty plea ever filed. We, of course, argued at that time that he waived all of his appellate rights. When this case, after the judge made his final decision in regards to the motions, we stood up and re-examined the motions. We reiterated to the court, your honor, there is an appellate waiver. And the judge reiterated that, in fact, had me read it into the record. There was no objection made saying, your honor, we disagree with that, that we are going to appeal this case or at least appeal it on the grounds of knowingly and willingly and voluntarily. Basically, the last word that was ever stated was, there is an appellate waiver. A second thing, one thing I do want to point out, such as a collateral attack, this is sort of like a felon in possession case. It's a crime based upon your status. This individual came back into this country an illegal alien, such as a felon in possession. Someone may be convicted of a crime of a felony, and he may be fighting that felony. But during that time, he cannot go out and possess a firearm. If he does, he is guilty of that crime, such as an illegal alien. If an illegal alien is deported out of this country and decides to scoff the law and come back into this country, he has broken the law. Even though if there is any sort of argument that his underlying deportation was improper or unlawful, the status at the time when he came back across the border was that he was an illegal alien. It is a crime of status, such as a felon in possession. If a person ends up getting his prior felony conviction reversed, at the time that he possessed that firearm, that is still a valid crime. So while there are some sympathetic factors in this, it is a status crime. And basically, there are some cases, and I did cite them in my brief at pages 22 and 23, as far as a collateral attack when it deals with whether or not, I believe the court asked, this might be a case of first impression on whether or not someone can collaterally attack this in the manner that they have. I made a brief reference to two cases, one coming out of the Supreme Court called Mendoza and one out of the Ninth Circuit that is listed on page 23 at the top. But the government's contention, first and foremost, he waived all of his appellate rights. He has never attacked it in his opening brief that it was knowingly, willingly, or voluntarily. He never attacked his criminal attorney until his reply brief, which I don't believe has properly been presented to this court in its opening brief. Thank you. Thank you very much. Counsel, even though you're out of time, I'll give you a minute. Your Honors, with respect to the district court's findings, I would point out one thing, is that the district court was under several misassumptions. One misassumption was that the Board of Immigration Appeals had mailed a decision to the appellant. The record is clear that the decision was mailed directly to the attorney. With respect to the issue of the appellate waiver, as I cited in my reply brief, U.S. v. Ronimo, this Court's decision in 2005, this Court explained that if the record is complete on the voluntariness of the appellate waiver, direct appeal is permitted and this Court has jurisdiction over the issue. At the trial level, there was a complete record made of the voluntariness of the guilty plea. The trial counsel who had advised the appellant to plead guilty submitted an affidavit saying that he never recognized any defense, told the appellant that he had no defense, and that evidence was not disputed. And that evidence establishes that the guilty plea was not knowing and voluntary. What was the defense? That he had a collateral attack to the deportation proceedings. Okay. Thank you very much. The case just argued is submitted. And we will next hear argument in United States v. Luis Arturo Amaya.
judges: Tallman, Bybee, Bea